STATE, Appellant, vs. McKUNE, Respondent.

*April 6—June 26, 1934.*

For the appellant the cause was submitted on the brief of the *Attorney General* and *R. M. Orchard,* assistant attorney general.

For the respondent there was a brief by *R. M. Rieser,* attorney, and *Olin & Butler* of counsel, all of Madison, and oral argument by *Mr. Rieser.*

FAIRCHILD, J.    However the courts may defer to the good judgment and good faith of the legislature, any citizen

whose constitutional rights are transgressed against by legislation may require the courts to pass upon regulations claimed to be passed under the police power.

Sub. (3) of sec. 352.56, Stats., provides as follows:

"No person, or the servant or agent of any person, shall directly or indirectly, return or accept the return or exchange of any bakery products that have been delivered or received for the purpose of sale, nor shall any consideration be given by any person in lieu of the return or exchange of such bakery products. The provisions of this subsection shall not prevent the return or exchange by any person of bakery products having marked defects as to preparation or quality that would cause persons desiring to purchase such articles of average quality to reject such defective articles, nor shall it prevent the giving of any consideration in lieu of an exchange of such defective bakery products."

In view of respondent's demurrer, it must be taken as undisputed that he did deliver to certain dealers certain bakery products for purposes of sale, that subsequently he exchanged these products, although at the time of the exchange they had no marked defects as to preparation and quality that would cause persons desiring to purchase such bakery products of average quality to reject them. There is no question but that such an action on the part of respondent constitutes a violation of sec. 352.56 (3). The only question here is whether this section is constitutional.

Sec. 1, art. I, of the Wisconsin constitution, provides:

"All men are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted among men, deriving their just powers from the consent of the governed."

Sec. 1 of the Fourteenth amendm. of the United States constitution, provides in part as follows:

". . . No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty,

or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." .

These constitutional provisions, which have been held to be substantially equivalent in their restrictive scope, *Pauly v. Keebler,* 175 Wis. 428, 185 N. W. 554, prescribe a rule of equality, and standing by themselves would prohibit any legislation which operated to restrict the rights and freedom of one individual or class and not of another. *Wisconsin Asso. of Master Bakers v. Weigle,* 167 Wis. 569, 168 N. W. 383. While the breadth of this rule has been greatly limited by the exercise of the police power, that again is to be tested by rules of reasonableness, both as to purpose and means employed. *Lowe v. Conroy,* 120 Wis. 151, 97 N. W. 942; *State v. Redmon,* 134 Wis. 89, 114 N. W. 137; *Mehlos v. Milwaukee,* 156 Wis. 591, 146 N. W. 882; *State ex rel. Owen v. Donald,* 160 Wis. 21, 151 N. W. 331; *State ex rel. Blaine v. Wisconsin Tel. Co.* 169 Wis. 198, 172 N. W. 225; *Pauly v. Keebler, supra; State ex rel. Carter v. Harper,* 182 Wis. 148, 196 N. W. 451.

The statute here objected to seeks to prohibit the return or acceptance of return of any bakery products that have been delivered or received for the purpose of sale, and to prohibit the giving of any consideration by any person in lieu of the return or exchange of bakery products. The declared purpose of the act is to prevent the distribution of contamination, infection, or disease among consumers, and to protect the food supply of the state against waste. But these declarations are not controlling except to the extent that they may be disclosed on the face of the act or inferable from its operation. 6 R. C. L. p. 110, § 110.

Even though it be assumed that the act in question is appropriate as a health measure and consistent with the exercise of the police power, there still remains the question of whether it involves a classification which is reasonable, or

whether it is arbitrary and discriminatory. The police power, in order that it may satisfy the rule of reason and avoid conflict with the constitutional clauses insuring equal protection of the law, must not be discriminatory in operation. If the statute representing the exercise of the power applies to less than all of the citizens, it must be justified upon the ground that there is a reasonable basis for classification.

There are two respects in which this enactment is asserted to be discriminatory. One is that it applies in effect only to large producers of bakery goods, they being the ones most likely to buy or to provide for the return of unsold goods from their customers, and by the prohibitory features of this law, the small producers are benefited by the deprivation of the larger dealers of this advantage. This contention assumes that the object of the statute is economic in that its purpose is to remove by legislative fiat some of the advantages accruing to the larger producers by reason of size and volume of business. The act merely operates to prohibit the return of bakery goods to the original manufacturer and seller. The next contention is closely related to the first and is based upon the fact that the vendor of bakery goods may not purchase them, although any other person may. This is claimed to constitute a discrimination as between buyers that has no foundation in a legitimate or reasonable classification.

The two contentions are governed by the same considerations. They present, however, two distinct situations with respect to the questions of constitutional validity. The first attacks the statute as being discriminatory within the classification made by the legislature. The second questions the reasonableness of the classification itself. Either contention, if supported by the facts, will bring the act here involved within the terms of the "equal protection" clauses and render it unconstitutional. Dealing with the first contention, the question is whether an act can be condemned as discrimina-

tory which purports to treat all members of a class equally by prohibiting a certain practice which all members of the class might indulge in, but which actually affects in its operation only a certain part of the class, since it is only a certain part of them that indulges in the practice. There is very little so-called class legislation which can be said to affect all members of the class equally. Nevertheless, this fact is not sufficient to render the statute discriminatory if the prohibited practice is of such a nature that the prevention of it comes within the scope of the police power. An attempt to single out, without good reason for doing so, a particular part of a class and legislate against it, and do it in the name of the protection of public health and safety for the purpose of covering up the real, less legitimate purpose, presents a different situation. *Chicago v. Netcher,* 183 Ill. 104, 55 N. E. 707; *State ex rel. Wyatt v. Ashbrook,* 154 Mo. 375, 55 S. W. 627, 48 L. R. A. 265. Likewise, where there is an attempt to institute special legislation which would otherwise be prohibited, by using language, general in its terms, but specifying such restrictions and qualifications that it is apparent on the face of the act that none but a particular individual or an unwarrantedly restricted class can ever be affected by it, the law will be declared invalid. *Wagner v. Milwaukee County,* 112 Wis. 601, 88 N. W. 577. But neither of these situations exists here. The act applies with equal force to all wholesale bakers, large and small, and it cannot be said to be discriminatory within the class merely because only certain ones therein indulge in the prohibited practice. The only question is whether the practice which the statute seeks to prevent is one which properly lies within the legislative exercise of the police power.

As to the second contention, a more serious question is involved. The question is whether an act which allows a dealer to sell his product, either for immediate consumption or for further distribution, to any and every person except

the one from whom he purchased it, constitutes an unreasonable classification and a discrimination against one particular potential buyer and in favor of all others.

The expressed purpose of the statute is to prevent contamination and waste. Disregarding the latter purpose for the present, it seeks to prevent contamination in two ways, first, by preventing taking back goods which have been previously handled and placing them with fresh goods in the trucks of the baker, and, second, by preventing the redistribution of these goods to other retailers. We do not rule against the worthiness or legitimacy of this purpose, but we do hold that the legislature has no right to pick out of a broad general class, that is, dealers in bakery products, one single person and prohibit that person from doing that which every other member of the class is free to do, merely because he happened to be the one who originally sold the goods to the dealer.

The law as enacted seeks to deprive the wholesaler of the right to regain possession of his goods, to buy them back, or to make a contract to induce the sale of a certain quantity of goods by agreeing to credit the customer with some amount to be determined on the basis of supplies left unsold. There is nothing in the act to prevent customers from purchasing the goods, taking them to their homes where disease may exist, and returning them to the dealer who may sell them to someone else. There is nothing to prevent the dealer, denied the right to return the goods to the bakery, from passing them on himself to others. There is nothing to prevent other wholesalers or any other person who may be inclined to do so, from buying the goods from the retailer for purposes of redistribution. In this way, goods may pass through innumerable hands, provided only that the journey is progressive and not regressive, under conditions as much or more conducive to contamination than if they were returned to the wholesaler in the first instance.

A law may fail to accomplish some of the purposes sought to be attained by it and still be constitutional, but it cannot arbitrarily say that a single person in a class shall be prohibited from doing objectionable acts and leave all other persons in the class, engaged in similar trade, free to do them. Such legislation is unreasonable, arbitrary, and discriminatory, and must be held unconstitutional. *United States v. Armstrong*, 265 Fed. 683; *Connolly v. Union Sewer Pipe Co.* 184 U. S. 540, 22 Sup. Ct. 431; 3 Willoughby, Constitution of the United States (2d ed.), p. 1931, § 1269.

Since it is our opinion that sec. 352.56 (3), Stats., is arbitrary and discriminatory, the question of whether it is indefinite and uncertain because of the lack of a definite standard as to the "quality" of the goods which may be returned under it, need not be considered.

*By the Court.*—Order affirmed.

WICKHEM, J., dissents.